```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

DOUGLAS WILLIAMS,
      Petitioner,

   v.                          CIVIL ACTION NO. 05-232
CHARLES ERICKSON, et al,    Judge Arthur J. Schwab
      Respondents.        Magistrate Judge Amy Reynolds Hay

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

### II.   REPORT

On August 18, 1998, a jury empaneled by the Court of Common Pleas of Allegheny County found Petitioner, Douglas Williams, guilty of the following charges: (1) one count of third-degree murder; (2) one count of aggravated assault; (3) one count of carrying a firearm without a license, in violation of the Pennsylvania Uniform Firearms Act ("UFA"); and (4) one count of recklessly endangering another person.  (Ex. 1 at 1).[1]  The Honorable Kathleen A. Durkin sentenced Petitioner to serve not less than fifteen nor more than thirty years on his third-degree murder conviction.  (Sentencing Hearing Tr. at 13-14).  Judge Durkin also ordered Petitioner to serve concurrent to his third-

---

[1] All exhibits cited herein are attached to the Respondents' Answer (Doc. 10).

1

degree murder sentence: (i) ten to twenty years for the aggravated assault conviction, and (ii) one to five years for the UFA conviction. (Id.)  No further penalty was issued on the reckless endangerment conviction. (Id.)

Judge Durkin described the evidence admitted at trial as follows:

> [A] review of the record in the instant case reveals that on the afternoon of September 20, 1997, four (4) individuals were standing and talking on a street corner in the Braddock section of Allegheny County.  At a certain point, the defendant approached these individuals, all of whom he knew, and began to talk as well.  Approximately twenty (20) minutes after the defendant arrived, he became embroiled in an argument with one (1) of the individuals in the group, Robin Williams.  This argument then escalated into a physical confrontation between the defendant and Mr. Williams.  Two of the other individuals who were standing there, Douglas Grinage and Tony Dilucente, went over and attempted to separate the two (2) combatants.  Ultimately, Douglas Grinage was successful in pulling Mr. Williams away from the defendant.  However, immediately thereafter, the defendant pulled out a handgun and fired it at Mr. Williams.  The bullet never reached its intended target, instead striking and killing Douglas Grinage.

(Ex. 2 at 2-3).

After unsuccessfully seeking relief from his convictions in state court on direct appeal (see Exs. 1 & 2) and in a post-conviction proceeding pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA") (see Exs. 4-7), Petitioner filed with this Court a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).

**A.    Legal Analysis**

    **1.    Sufficiency of the Evidence**

Petitioner claims that the Commonwealth's evidence was insufficient to sustain the jury's verdict of guilt on the third-degree murder and aggravated assault convictions.  He contends that the Commonwealth failed to produce evidence to support a finding that he acted with malice (an element to third-degree murder)[2] or intent to cause serious bodily injury to Robin Williams(an element of aggravated assault).  He directs the Court to evidence introduced at trial that supported his defense that he did not aim his gun at either his alleged intended target, Robin Williams, or the victim, Douglas Grinage.  (Doc. 2 at 6-11).  He specifically points out that witnesses at trial testified that he yelled: "Get out of the way!" as they heard gunshots, thus demonstrating that his gun fell from his waistband and that it discharged accidentally.  (Id.)

To assess a claim that the evidence is constitutionally insufficient to sustain a conviction, the Court must consider whether, viewing the evidence in the light most favorable to the prosecution, any rational finder of fact could have found the

---

    [2]  In defining "malice" as an element of murder, Judge Durkin explained: "The law recognizes the doctrine of transferred intent.  Thus, if you find the defendant had the requisite malice to kill any person or person other than Douglas Grinage, and that acting on such malice he unintentionally killed Douglas Grinage, you may find the defendant acted with malice in killing Douglas Grinage."  (Trial Tr. at 203).

essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Orban v. Vaughn, 123 F.3d 727, 731-33 (3d Cir. 1997). The Superior Court of Pennsylvania adjudicated this claim on the merits on direct appeal. Accordingly, the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d) applies to this claim. It provides, in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Price v. Vincent, 538 U.S. 634, 641 (2003); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).

In denying relief, the Superior Court held:

> [M]alice may be found where the actor consciously disregard[s] an unjustified and extremely high risk that his actions might cause death or serious bodily harm. . . .
>
> At trial, it was established that this shooting occurred within moments after a fight between [Petitioner] and Robin Williams ended. Witnesses testified that they heard [Petitioner] yell, "get out

4

> of the way!" as they heard a single gunshot. Although [Petitioner] testified that he did not remember pulling the trigger of the gun, the jury was free to conclude otherwise since matters of credibility are strictly within its province.[ ]
>
> [Petitioner] claims that sufficient evidence is lacking since there was no testimony that [he] actually aimed the gun at anyone before it discharged. The jury chose to infer that the gun was, in fact, aimed in the direction of Robin Williams and Douglas Grinage, as was within its province. Therefore, since malice may be inferred from the use of a deadly weapon upon a vital part of the body, there was sufficient evidence to support [Petitioner's] conviction of third-degree murder.
>
> . . . . "A person is guilty of aggravated assault if he . . . attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S.A. § 2702(a)(4). Again, as the evidence introduced at trial established that [Petitioner] fired a weapon in the direction of Robin Williams after the two engaged in a verbal and physical confrontation, sufficient evidence also exists to support [his] conviction for aggravated assault upon the victim. See [Commonwealth v. Woods, 710 A.2d 626, 630-31 (Pa. Super. Ct. 1998)] ("Commonwealth v. Hunter, 434 Pa. Super. 583, 644 A.2d 763 (1994), makes clear that specific intent to injure [for purposes of an aggravated assault charge] can be inferred from the circumstances of firing a gun into an occupied house.")

(Doc. 2 at 3-5).

The Superior Court aptly set forth why any rational finder of fact could have found the elements of third-degree murder and aggravated assault beyond a reasonable doubt, and there is no need for the Court to expand upon its analysis. Essentially, Petitioner takes issue with the jury's finding that that the Commonwealth's evidence was more convincing than his defense that the shooting was an accident. As the Superior Court noted,

5

however, it was within the jury's province to credit the evidence as it saw fit.  Moreover, in reviewing this claim, this Court must consider the evidence in the light most favorable to the prosecution.  <u>Jackson</u>, 443 U.S. at 319.

In sum, the Superior Court's decision that there was sufficient evidence to support a conviction of third-degree murder and aggravated assault was not "contrary to" nor an "unreasonable application of" "clearly established Federal law," and it did not result "in a decision that was contrary to, or involved an unreasonable determination of the facts in light of the evidence presented in the state court proceeding,"  28 U.S.C. § 2254(d).

**2.   Sentencing Claims**

(a)

Next, Petitioner claims that his sentence is constitutionally invalid "because the trial court considered prior convictions infirm under <u>Gideon v. Wainright</u>, 372 U.S. 335 [ ] (1963)."  (Doc. 2 at 12).

In their Answer, Respondents assert that Petitioner is not entitled to federal habeas review on this claim because he did not first present it, or "exhaust" it, before the Pennsylvania courts, and therefore he has now committed insurmountable

procedural default.[3]  (Doc. 10 at 12).  Petitioner acknowledges that this unexhausted claim is procedurally defaulted.  (Doc. 13 at 2).  He contends, however, that this Court may review the defaulted claim on the merits because he can satisfy the "cause and prejudice" exception to the procedural default doctrine, as

---

[3] The federal habeas statute "requires that prisoners exhaust their claims in state court before seeking relief in federal courts." Slutzker v. Johnson, 393 F.3d 373, 379 (3d Cir. 2004) (citing 28 U.S.C. § 2254(b)(1)(A)). Generally, a district court should require that a state prisoner return to state court for review of unexhausted claims. See Crews v. Horn, 360 F.3d 146 (3d Cir. 2004). However, a federal court may excuse a petitioner's failure to exhaust in cases where the federal court can confidently predict that the state courts would not entertain review of the claims because such review would be barred by a state procedural rule, such as a statute of limitations. Slutzker, 393 F.3d at 380; Whitney v. Horn, 280 F.3d 240, 249-53 (3d Cir. 2002); Lines v. Larkins, 208 F.3d 153, 162-66 (3d Cir. 2000). That is the case here, as any PCRA petition that Petitioner might now attempt to file would be untimely and unreviewable in the Pennsylvania courts. See 42 Pa.Cons.Stat. § 9545(b)(1). Under such circumstances, exhaustion is considered "futile." Slutzker, 393 F.3d at 380; Whitney, 280 F.3d at 250; Lines, 208 F.3d at 162. Importantly, when a petitioner cannot exhaust his claims due to futility, those claims are considered "procedurally defaulted" in federal habeas court. Id. at 380; Whitney, 280 F.3d at 252; Lines, 208 F.3d at 166. The procedural default doctrine applies to bar federal habeas review when a state court has declined or would decline "to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Id. at 380-81 & 381 n.6 (internal quotation and citation omitted). "The raison d'être for the doctrine lies in the fact that a state judgment based on procedural default rests on independent and adequate state grounds." Id. at 381 (citations omitted). When exhaustion is futile because state relief is procedurally barred, federal courts may only reach the merits of a claim if the petitioner can establish "cause" for the default and resulting "prejudice," or establishes a "fundamental miscarraige of justice." Id. As discussed infra, Petitioner argues that he has established cause and prejudice for his default.

7

set forth in Coleman v. Thompson, 501 U.S. 722 (1991).  (Doc. 2 at 19-20; Doc. 13 at 2); see also Slutzker, 393 F.3d at 381; Whitney, 280 F.3d at 253-61; Lines, 208 F.3d at 166-69.  In Coleman, the Supreme Court instructed that a federal court may review the merits of a procedurally defaulted claim if the petitioner establishes "cause" for the default by demonstrating that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule[,]" 501 U.S. at 753, as well as "prejudice," meaning "not merely that errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." Murray v. Carrier, 477 U.S. 478, 494 (1986) (internal citation and quotation omitted).

In the instant case, Petitioner alleges that the "cause" for his procedural default was his prior counsels' failure to raise the claim before the state courts.  (Doc. 2 at 19).  This contention is insufficient to sustain his burden of showing "cause" for his default.

Petitioner's appellate counsel's alleged failure to raise the claim at issue is not the type of conduct that satisfies the "cause" requirement.  As the Third Circuit Court has stated:

> Examples of "cause" that are "external to the defense" include interference by the state with the conduct of a defense or the previous unavailability of the factual or legal basis of a claim. *Generally, "cause" cannot*

> *be based on the mere inadvertence of the petitioner or petitioner's counsel to take an appeal. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default."* Id. *at 486 [ ]. Indeed, in* Coleman v. Thompson, *501 U.S. 722 [ ] (1991), the Court addressed . . . the effect of a litigant's inadvertent failure to take a timely appeal in a state collateral proceeding. The Court, applying* Murray v. Carrier, *concluded that an "ignorant or inadvertent procedural default" does not satisfy the cause element of cause and prejudice.* Coleman, *501 U.S. at 752[.]*

Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002) (emphasis added); see also Lines, 208 F.3d at 166-67.

Moreover, while the Supreme Court has recognized that attorney error that constitutes ineffective assistance of counsel within the meaning of Strickland v. Washington, 466 U.S. 688 (1984), can constitute cause for relief from procedural default, Coleman, 501 U.S. at 753-54, in the instant case Petitioner may not rely on his appellate counsel's alleged ineffective assistance to avoid procedural default. Concerned with comity and the prospect of placing federal courts in the anomalous position of adjudicating unexhausted state claims, the Supreme Court has required strict exhaustion of state remedies, even when counsel has been responsible for some procedural default. See Murray, 477 U.S. at 488-89. Thus, "a claim of ineffective assistance of [appellate] counsel [must] be presented to the state courts as an independent claim before it may be used to establish procedural default." Id. at 489; see also Lines, 208

9

F.3d at 167. This Petitioner failed to do. Since he never properly placed before the state courts a claim of ineffective assistance of appellate counsel for failing to raise the sentencing claim based upon Gideon v. Wainright, he may not rely on such a claim as "cause" excusing him from the procedural default. See Lines, 208 F.3d at 167.

Additionally, Petitioner cannot rely on any claim that his PCRA counsel's failure to raise this claim during the PCRA proceedings establishes "cause." To qualify as "cause" for a procedural default, an attorney's ineffectiveness must rise to the level of a Sixth Amendment violation. Cristin, 281 F.3d at 420 (citing Murray, 477 U.S. at 488). Because Petitioner has no Sixth Amendment right to representation during his PCRA proceedings, any alleged ineffectiveness on counsel's part during that proceeding cannot establish cause for the procedural default. Id. (citing Commonwealth v. Finley, 481 U.S. 551 (1987); Coleman, 510 U.S. at 752).

For all of the foregoing reasons, this claim is procedurally defaulted, and the Court may not address it on the merits.

(b)

In Petitioner's final claim, he contends that he is entitled to habeas relief because the trial court misapplied the sentencing guidelines when it sentenced him at his aggravated

assault conviction.[4]  As noted above, the trial court sentenced Petitioner to ten to twenty years on his aggravated assault conviction, which he is serving concurrent to a term of fifteen to thirty years imprisonment for his third-degree murder conviction.

Petitioner raised this claim during the PCRA proceedings. In response, the Commonwealth conceded that the guidelines used by the trial court to sentence Petitioner at his aggravated assault conviction were incorrect.  (Ex. 7 at 7-8).  In its brief, the Commonwealth explained:

> [Petitioner], who had used a deadly weapon, had an offense gravity score of 11 and a prior record score of zero.  Thus, a sentence in the standard range of the guidelines would be 54 to 72 months, and a sentence in the aggravated range would be 72 to 84 months.  The Guideline Sentence Form submitted by the Commonwealth, however, listed the standard range as 60 to 120 months, with 120 months as the aggravated range (which is also the statutory maximum). . . . After imposing sentence, including the 10 to 20-year concurrent term for aggravated assault, the court expressly stated that the sentences were in the **standard** range.
>
> It appears that the court intended to impose an upper-end, standard-range sentence for aggravated assault, and if the guidelines submitted by the Commonwealth had been the proper ones, the sentence imposed would have been viewed as such.  Because the guidelines were incorrect, however, the sentence was outside the aggravated range of the guidelines.

(Id. at 6-7 (quoting Commonwealth's brief at 13-14) (internal

---

[4] Petitioner also claims that the trial court misapplied the sentencing guidelines with regard to his UFA conviction. That claim is moot, as Petitioner has already served the maximum sentence he received for his UFA conviction.

citations omitted) (emphasis in original)).

After reciting the Commonwealth's concession, the Superior Court acknowledged the merit of Petitioner's claim.  It determined, however, that because he was serving his sentence for aggravated assault concurrent to the much longer sentence of fifteen to thirty years imprisonment for third-degree murder, it was not required under state law to remand the aggravated assault conviction to the trial court for the formality of resentencing. (Id. at 8 (citing Commonwealth v. Robinson, 817 A.2d 1153 (Pa. Super. Ct. 2003)).[5]  This Court is bound by that state-law determination.  See e.g., Barry v. Brower, 864 F.2d 294, 298 (3d Cir. 1988).

There is no additional relief that this Court can grant Petitioner.  The Superior Court has recognized that the trial court erred in sentencing him on his aggravated assault conviction.  Petitioner argues, however, that notwithstanding the Superior Court's decision, "he will suffer prejudice as a result of the appearance of a criminal act more severe tha[n] it actually is via the extended length of the sentence imposed."

---

[5] In Robinson, the Superior Court reversed a judgment of sentence for aggravated assault and affirmed the judgment in all other respects.  The court determined that it did not need to remand for resentencing on the aggravated assault conviction because its disposition did "not upset the court's sentencing scheme as the sentence [it] reverse[d] ... had been ordered to run concurrent to the sentence" imposed on the sentence it affirmed.  Id. at 1163 n. 14.

(Doc. 2 at 18). This argument is not persuasive. The Superior Court's written decision expressly acknowledging that trial court erred in sentencing Petitioner beyond the standard range of 54 to 72 months on the aggravated assault conviction will assuage any prejudice that he might otherwise have incurred as a result of the error.

**B.    Certificate of Appealability**

Section 102 of AEDPA, 28 U.S.C. § 2253(c), codifies standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." In the case at bar, Petitioner has not made any showing that he has been denied any of his constitutional rights. Accordingly, a certificate of appealability should be denied.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition be denied and that a certificate of appealability be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date

of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

```
                                  _____
                                  Amy Reynolds Hay
                                  United States Magistrate Judge
```

Dated:

cc:  Judge Arthur J. Schwab

    DOUGLAS WILLIAMS
    DT-7180
    SCI Retreat
    660 State Route 11
    Hunlock Creek, PA 18621

    Rusheen R. Pettit
    Office of the District Attorney
    401 Allegheny County Courthouse
    Pittsburgh, PA 15219